**UNITED STATES BANKRUPTCY COURT**
*DISTRICT OF CONNECTICUT*

_____
:
IN RE                                                        :         CHAPTER 7
                                                                 :
JOSEPH REGENSBURGER III           :         CASE NO. 20-50868
                    Debtor                             :
                                                                 :         MARCH 17, 2021
_____:

**CREDITORS' REPLY TO GUS CURCIO'S OBJECTION TO CREDITORS' MOTION FOR RULE 2004 EXAMINATION OF GUS CURCIO, SR.**

Pursuant to Fed. R. Bankr. P. 2004(a) and L. Bankr. R. 2004-1, Attorney Kenneth J. Krayeske on behalf of creditors Crystal Horrocks, Sugeily Ortiz, Jacqueline Green, Dina Coviello, Yaritza Reyes, Zuleyma Lopez, Dalynna Seoung and Krayeske Law Offices (the "Creditors"), hereby reply to Gus Curcio's objection to the Creditors' motion for a Rule 2004 Examination.

The Court should deny Mr. Curcio's objection in totality, and the Court should decline Mr. Curcio's invitation to limit the scope of the Rule 2004 examination.

**1. Mr. Curcio's Objection Incorrectly Claims Mr. Regensburger Has No Liability**

Mr. Curcio wrongly objected that "the award did not expressly find any individual liability on the part of the Debt to the Creditors." (ECF 47, P2). This is incorrect, and Judge Robert Holzberg (ret.), sitting as arbitrator, in his Corrected Arbitration Damages Award, March 17, 2020, identified the statutory authority for an award against the Defendants, Keepers, Inc. and Debtor Regensburger. A true and correct copy of this Award is attached as Exhibit 1 herein.

"The preliminary question in this dispute was resolved by an award on July 18, 2019, in which the undersigned determined that the Plaintiffs are employees of the defendants, subject to the Fair Labor Standards Act (FLSA) 29 U.S.C. § 201, *et seq.* and Connecticut Labor Law, Connecticut General Statutes § 31-58." Exhibit 1, P1-2.

Judge Holzberg held repeatedly that Defendants were liable under the Connecticut Labor Law and the FLSA. Debtor Regensburger in arbitration never once moved to dismiss, and the Creditors regularly briefed that Regensburger was personally liable as the employer. The Connecticut Supreme Court concluded that its legislature intended to hold officers and agents of corporations individually:

"We, therefore, agree with the plaintiff that when placed in its statutory context, the term employer as used in § 31-72 encompasses an individual who possesses the ultimate authority and control within a corporate employer to set the hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so." *Butler ex rel. Skidmore v. Hartford Technical Institute, Inc.*, 243 Conn. 454, 462 (1997).

This is not new law, and nor is the interpretation of the FLSA that holds corporate agents personally liable for wage and hour violations. "Personal liability may be imposed on employers for wage and hour violations under both the FLSA and NYLL." *Solano v. Andiamo Café Corp.*, Docket No. 1:19-CV-03264 (SN), 2020 U.S. Dist. LEXIS 214754, at *7 (S.D.N.Y. Nov. 17, 2020).

Thus, when Judge Holzberg's decision is under the Connecticut Labor Law and the FLSA,

personal liability of Mr. Regensburger is clear and established.

**2. Mr. Curcio Is A Vital Witness With Expansive Knowledge of Regensburger's Affairs**

Mr. Curcio's knows far more than he lets on about Mr. Regensburger's finances. Mr. Curcio's name was mentioned more than 90 times in the December 16, 2020 and the February 19, 2021 Rule 341 Meetings of Creditors.

Mr. Curcio's claim of not having any assets of Keepers, Inc. is tenuous at best (ECF 47, P2). The Connecticut Appellate Court is wise to how Curcio, Sr. abuses the corporate form to protect assets from creditors:

> The documentary evidence and the testimony of the witnesses, however, when reviewed in their entirety, demonstrate that the parties were engaged in intrafamilial business dealings which involved loosely documented, or completely undocumented, corporate transactions, including real estate transfers, for reasons such as the protection of assets from potential creditors. Despite the fact that during the years in question, both Curcio, Sr., and Curcio, Jr., were involved in the creation of numerous corporate entities and had access to legal counsel, it appears that they and their business associates acted on a misguided trust and, at times, disregarded legal formalities, a situation we do not countenance.

*Success, Inc. v. Curcio*, 160 Conn. App. 153, 178 (2015).

So Creditors maintain Mr. Curcio may personally not hold any assets of Regensburger or of Keepers, Inc. that may have belonged to its former president Regensburger, but Curcio's limited liability company 500 North Avenue, LLC, which has its own tortured history, and is admittedly controlled by Curcio, was Regensburger's and it holds at least $99,758.31 worth of debt owed to Keepers, Inc. The ninth amended plan that the Bankruptcy Court rejected

indicated that 500 North Ave., LLC not only enjoyed a $10,000 per month payment from Keepers, Inc. as an option on a lease, but this loan. See *In re: 500 North Ave., LLC*, Case 14-31094, Doc. 633, May 18, 2018. . This 9th Amended Plan also indicated Mr. Curcio, Sr. "will continue to serve the Company as its manager." *Id*., P9 of 22. Yet Mr. Regensburger owned 100 percent of the company. This is a pattern and practice of insidious behavior, and here, Mr. Regensburger himself is the straw for Curcio's activities.

So Mr. Curcio may not personally hold Mr. Regensburger's assets, but he does through one of his dozens of flimsy corporate veils which a court of competent jurisdiction has already laid the groundwork for veil piercing. That Mr. Regensburger walked away from a cash cow like Keepers, Inc. without a penny in his pocket for his 100 percent interest as the only corporate officer in 2015 after litigation was served upon him should invite suspicion that Mr. Regensburger stripped himself of his assets long before this bankruptcy to deny creditors.

Another example can be seen in the JRB Holdings litigation (ECF 47, P2). The two notes Keepers, Inc. gave in December 2013 and December 2014 occurred during Debtor Regensburger's tenure as president of Keepers, Inc. The Debtor at his 341 hearings testified he knew nothing about this first $105,000.00 note to Side Step, Inc. or the second $620,000.00 note to Yellow Rose, Inc.[1]

---

[1] Mr. Curcio properly corrected undersigned for pleading the wrong amount of the first note (ECF #47, P2), yet Mr. Curcio incorrectly stated the amount of the second note as $600,000.00 (ECF 47, P2), when in reality, Keepers, Inc. borrowed $620,000.00 from Yellow Rose, Inc. Creditors got this note amount incorrect in their Rule 2004 Motion, yet got the actual amount of the total debt correct. ECF 45, ¶9

It seems implausible that a company president allowed someone else to encumbered the corporate form with a six figure debt, and none of that money flowed to the corporation president. It is equally implausible that none of the money is owed to the corporation president? Mr. Regensburger testified in his February 2021 Rule 341 hearing "As I say, I was either the principal or a member of a lot of companies that I had nothing to do with the running of the business."[2] A true and correct copy of the relevant pages of Mr. Regensburger's Rule 341 hearing testimony from February 19, 2021 is attached as Exhibit 2. See P15, L25 – P16, L3.

Just before this, the United States Trustee Holley Claiborne asked Mr. Regensburger a series of questions about Mr. Regensburger's conversations with Mr. Curcio about various companies, and Mr. Regensburger had no information. Exhibit 2, P10, L5 – P13, L7.

### 3. Mr. Curcio's Testimony Should Not Be Limited by Any Court Orders

The next portion of the Regensburger testimony from February is instructive as to why Mr. Curcio needs to testify without any subjective shackles:

> "Q: So what purpose did it serve your interest for your name to be used as a principal if you had no daily input in the operations of the company?
> A: Friendship.
> Q: Okay. Under what terms did you agree to allow Mr. Curcio to utilize your name to run companies?
> A: He asked me if I would do it, and I said yes. No terms."

---

[2] The 500 North Ave, LLC bankruptcy confirms this testimony. In the 9th Amended plan of reorganization, Mr. Regensburger submitted to the court he was 100 percent owner of the company, but that Mr. Curcio ran it.

Exhibit 2. See Page 16, L3-11.

Put slightly differently, "It appears as if Mr. Regensburger allows his name to be used for Mr. Curcio's corporate purposes, and Mr. Regensburger begs us to believe that he receives no remuneration for this use of his identity. Is that correct, Mr. Regensburger? A: Yes." Exhibit 2, P25, L1-9.

During the February 2021 Rule 341 meeting, Attorney Charmoy went so far as to assert attorney-client privilege on behalf of Mr. Curcio for any conversations Mr. Regensburger had with Mr. Curcio.

> Q: And when did you talk to Mr. Curcio about the Horrocks litigation?
> Mr. Charmoy: Only answer if it was outside of a consultation with an attorney.
> Mr. Krayeske: I'm going to object to that, and I'm going to say Mr. Curcio does not enjoy attorney-client privilege.
> Mr. Charmoy: Well, I –
> Mr. Krayeske: In terms of Keepers, Incorporated, in no way does Gus Curcio enjoy attorney-client privilege.

Exhibit 2, P36, L1-25.

Oddly enough, Mr. Curcio's objection (ECF #47) failed to raise attorney-client privilege, despite his puppet Joe Regensburger's bankruptcy attorney claiming such privilege for Mr. Curcio. Still stranger is that Mr. Regensburger further admitted that Mr. Curcio paid the attorneys' fees for the Keepers' litigation. See Exhibit 2, P35, L17-22; P38, L5-24.

Creditors would also like to know who is paying for Mr. Regensburger's bankruptcy counsel, as facts point to this Chapter 13 petition as an exercise in protecting the puppet master Gus Curcio. Mr. Regensburger testified that in the few conversations he had with Mr.

Curcio about the Keepers litigation, Mr. Curcio never promised to pay Regensburger's liabilities, nor did Mr. Regensburger ask Mr. Curcio to pay this liability. Exhibit 2, P39, L21 – P40, L4; see also P42, L2-6.

### 4. The Bankruptcy Estate May Have Claims Against Mr. Curcio

Mr. Regensburger's testimony distorts the definition of a friend[3] to hide over the purpose of this bankruptcy: to evade the consequences of Mr. Curcio's breaches of Connecticut Labor Law and the FLSA. Creditors must know if the Bankruptcy Estate has a breach of fiduciary duty claim against Mr. Curcio, or a private cause of action under Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO") or a wage and hour claim for unpaid work Mr. Regensburger did for the Curcio organization.

Mr. Curcio ran Keepers. Exhibit 2, P40, L5-13. Mr. Regensburger testified Mr. Curcio wanted him to be president of an adult entertainment club without pay because "I had a clean record, and that I was an upstanding citizen." Exhibit 2, P40, L25 – P41, L16. It would seem, then, that Mr. Curcio had superior knowledge and thus a fiduciary duty to his "friend" whom he did not pay for the use of his identity.

Evidence tends to demonstrate that Mr. Curcio is the ultimate beneficiary of Mr. Regensburger's bankruptcy, which suggests liability under 18 U.S.C. §1861(1)(D). Mr.

---

[3] "An acquaintance for whom one has at least some degree of fondness." (Ballentine's Law Dictionary)

Regensburger's testimony that Mr. Curcio operates Keepers creates a taste of bankruptcy chicanery, since the debt seeking to be discharged is a result of Mr. Curcio's actions, and not Mr. Regensburger's, based on his straw man testimony. Mr. Regensburger, in effect, allowed his person to be a shell company.

Under RICO, the Bankruptcy Estate here may have a private right of action against Mr. Curcio (among others) for the $200,000 judgment, arising from likely racketeering activity. Creditors need to suss out all the connections and ways in which the Bankruptcy Estate can reclaim funds.

Before the fourth convening of the Rule 341 meeting April 7 Creditors must gather data from Mr. Curcio, since Mr. Regensburger cannot seem to recall everything that Mr. Curcio has told him.

> [By Ms. Claiborn] Q: What efforts did you take, Mr. Regensburger, to find information about monies that you were owed from different companies?
> A: I talked to Gus about that, Curcio.
> Q: When did you talk to Mr. Curcio?
> A: On quite a few occasions in the past few months.

A true and correct copy of the transcript from the December 16, 2020 Rule 341 meeting of creditors is attached as Exhibit 3, see P27, L8-14.

"[By Ms. Claiborn] Q: Did you speak with Mr. Curcio about Cummings Enterprises? A: Not that I recollect. As I said, ma'am, there so much stuff here that it's totally confusing." *Id.*, P28, L3-7. If the Debtor is confused, and cannot answer, Creditors merit an unfettered examination of Mr. Curcio about all aspects of his knowledge of Mr. Regensburger's finances.

Mr. Curcio's objection reads like it was written without having read the transcripts of Mr. Regensburger's 341 hearings. Mr. Regensburger's testimony not only implicates Curcio in some strange dealings, but it moots his objections, as Regensburger over and over submits his finances to Curcio's dominion.

For these reasons, the Court should grant Creditors motion to examine Mr. Curcio and his objection to the Motion for Rule 2004 Examination should be denied.

Dated: March 17, 2021, at Hartford, Connecticut.

Respectfully Submitted,

BY: /s/_____
Kenneth J. Krayeske, Esq.
Counsel for Crystal Horrocks et al
Kenneth J. Krayeske Law Offices
255 Main Street, 5th Fl.
Hartford, CT 06016
(860) 995-5842
FAX: (860) 760-6590
Email: attorney@kenkrayeske.com
Federal Bar # CT28498
