**UNITED STATES BANKRUPTCY COURT**
*DISTRICT OF CONNECTICUT*

_____
:
IN RE : CHAPTER 7
:
JOSEPH REGENSBURGER III : CASE NO. 20-50868
         Debtor :
: SEPTEMBER 21, 2022
_____:

**CREDITORS' REPLY TO GUS CURCIO'S OBJECTION TO THE CREDITORS' MOTION FOR ORDER TO SHOW CAUSE WHY HE SHOULD NOT BE HELD IN CONTEMPT AND SUFFER SANCTIONS**

Pursuant to Fed. R. Bankr. P. 2004(a) and L. Bankr. R. 2004-1, Attorney Kenneth J. Krayeske on behalf of creditors Crystal Horrocks, Sugeily Ortiz, Jacqueline Green, Dina Coviello, Yaritza Reyes, Zuleyma Lopez, Dalynna Seoung and Krayeske Law Offices (the "Creditors"), reply to Gus Curcio's objection (ECF 239, September 16, 2022) to the Creditors Motion for Order to Show Cause Why Gus Curcio Should Not Be Sanctioned.

    **I.**    **Mr. Curcio Is a Party, With Standing, and A Motion for Order to Show Cause is Appropriate**

Mr. Curcio's objection makes great hay saying he has no standing to squash a subpoena that is not directed at him unless he has a privilege or right at stake (Id., p3). Mr. Curcio ignores Ms. Schede's testimony that she asked Mr. Curcio for access to the digital files and he said "Not at this time." See ECF 237. Mr. Curcio's objection tries to avoid liability for preventing compliance with a lawful Court order.

On Page 3 of his objection, Mr. Curcio cited *United States Regional Econ. Dev. Auth., LLC*

*v. Matthews*, 2018 WL 2172713 at *7-*8 (D. Conn. May 10, 2018) as authority for the proposition that he had could not object to the Schede subpoena because he had no standing as he was not the real party in interest.

Her testimony, though, that she had to ask him for permission to produce documents because they were his and not hers belies that argument. Further eroding the *United States Regional Econ. Dev. Auth.* case is Mr. Curcio's agreement to allow Ms. Schede to produce some of the documents, but not all of the requested production. So Mr. Curcio allowed certain production, and disallowed other production.

Mr. Curcio, as a creditor listed in the docket of this Ch. 7 petition, is a party to this action who himself could move for Rule 2004 examinations and take other actions in this case. His objection glosses over this, which gives the Court additional jurisdiction over his actions here.

The three-point test from *EEOC v. Local 580*, 925 F.2d 588, 594 (2d Cir. 1991) cited by Mr. Curcio on PP4-5 of his Objection applies here. First, the Court's order is clear and unambiguous. Mr. Schede testified Mr. Curcio knew of it before she did as he told her about it. Mr. Curcio actually produced some of the documents Ms. Schede turned over to Creditors in this Rule 2004 exam. Second, the proof of non-compliance here is clear and unambiguous. Ms. Schede asked Mr. Curcio multiple times for the production and he said "Not at this time." Third, Creditors have been diligent in attempting to accomplish what was ordered.

II. **Mr. Curcio's Attempt to Hide Himself as the Real Party In Interest Here Foists Fraud Upon this Court**

It would seem the strangest result that Mr. Curcio can pull puppet strings like he has in this bankruptcy and not be held accountable by this Court for his conduct. As best as undersigned and Creditors can surmise, Debtor Joseph Regensburger ended up in this Ch. 7 petition due to the following course of conduct:

a. Gus Curcio, a convicted felon, likely cannot under Connecticut law receive a liquor license. So he asked his "friend" Joe Regensburger to be the president of Keepers, Inc. for him. Together, they conspired to obtain a liquor license for Keepers, Inc. under false pretenses.

b. Then, Keepers, Inc. illegally misclassified its exotic dancers as independent contractors instead of employees and routinely violated federal and state wage and hour laws. Keepers, Inc., managed and operated by Mr. Curcio, denied dancers overtime and minimum wage and made them pay to work.

c. Creditors sued in 2015 in Connecticut Superior Court, naming Joe Regensburger as the president of Keepers, Inc., not knowing that Mr. Regensburger was a mere front man, a shell, for Mr. Curcio, the real party in interest.

d. After years of delays, six of the dancers (the Creditors here) won a judgment of approximately $200,000 against Keepers, Inc. and Mr. Regensburger. In that case, Mr. Regensburger testified he was the owner of Keepers, Inc.

e. Mr. Regensburger filed this Ch. 7 petition to avoid this judgment, which is actually the result of Gus Curcio's management and ownership of Keepers, Inc.

f. Mr. Curcio for years has used Mr. Regensburger as a financial pawn. Mr. Regensburger has cashed hundreds of thousands of dollars in checks, some made out to cash, some made out to Mr. Regensburger himself for Mr. Curcio. No one will explain where the money comes from or where the money goes or for what purpose it is used, outside of paying bank fees and other small pieces of evidence Creditors have found.

g. In a Rule 2004 examination in this Ch. 7 petition, Mr. Curcio avoided answering all questions by seeking the shelter of the Fifth Amendment to the United States' Constitution privilege against self-incrimination.

h. Mr. Curcio has multiple other people standing in as fronts for him running corporations, and they have no idea what Curcio does with the companies they allegedly own and run. In a Rule 2004 examination, one such patsy, Shaun Moffatt, did not understand anything about how Curcio ran his company, SRKING 2, LLC.

i. Mr. Curcio's apparent tampering with witnesses and the debtor himself cannot be ruled out at this point, given how Mr. Moffatt and Mr. Regensburger both showed up to their Rule 2004 exams with identical cue

cards instructing them to plead the 5th.

j. Mr. Curcio skillfully and expertly employs a cadre of lawyers to delay and deny Creditors. Keepers, Inc. makes more than $7,000 a week. Creditors have patiently navigated the legal system for eight years to obtain recourse for the wage and hour violations they suffered at Mr. Curcio's hands. Another Curcio minion, Randi England, testified in the arbitration hearing in 2019 that Keepers, Inc. continued to pay dancers as independent contractors. The lawlessness continues unabated.

k. Creditors have demonstrated likely tax and bankruptcy fraud in this case. Creditors have been chewing on the concept that this very bankruptcy may be a fraud upon the Court: Mr. Curcio and Mr. Regensburger conspired to have Mr. Regensburger hold himself out to the Secretary of the State of Connecticut, the Connecticut Liquor Control Commission and the public as the owner of Keepers, Inc. when they knew he was not. They deceived Creditors, deceived the Connecticut Superior Court, deceived the Arbitrator and they continue to pretend with this Court that all of this is normal and untouchable by the inherent powers of this Court. Mr. Regensburger filed this Ch. 7 petition to avoid a debt that he knew was not his in the first place, but nevertheless remains his because in a deposition during the Arbitration phase of this case, Regensburger testified he was owner of Keepers, Inc. He

       conspired with Mr. Curcio in that case to accept liability for something he did not do, and now tris to remove this stain from his financial record herein.

  l.  Mr. Regensburger has deceived this Court before, as he admitted in this Ch. 7 petition that when 500 North Avenue, LLC filed its Ch. 11 petition bankruptcy in this Court, he was not the owner of 500 North Avenue, LLC, but a stand in for Mr. Curcio.

Creditors feel frustrated that Mr. Curcio operates in the zone where the law is a spiderweb: too weak for a bear like him; too strong for flies like Creditors. The Creditors here have tried to avoid inundating the Court with documents, but the amount of garbage that Creditors have had to contend with in this Ch. 7 proceeding stuns the imagination. This is beyond typical chutzpah. This Court has the inherent power to constrain Mr. Curcio and his machinations.

### III.    This Is Not The First Court to Confront Mr. Curcio's Web of Entanglement

The Connecticut Appellate Court and the United States District Court for the District of Connecticut have already seen through Mr. Curcio's manipulation of the corporate form to avoid liability. The Appellate Court ruled against Gus Curcio, Sr., through Success, Inc., when he sued his son Gus Curcio, Jr.:

> The documentary evidence and the testimony of the witnesses, however, when reviewed in their entirety, demonstrate that the parties were engaged in intrafamilial business dealings which involved loosely documented, or completely undocumented, corporate transactions, including real estate

> transfers, for reasons such as the protection of assets from potential creditors. Despite the fact that during the years in question, both Curcio, Sr., and Curcio, Jr., were involved in the creation of numerous corporate entities and had access to legal counsel, it appears that they and their business associates acted on a misguided trust and, at times, disregarded legal formalities, a situation we do not countenance.

*Success, Inc. v. Curcio*, 160 Conn. App. 153, 178 (2015).

The Appellate Court reviewed facts showing how Mr. Curcio moved assets, and disregarded the corporate form, which is this Regensburger bankruptcy.

> On August 22, 2011, Robin Cummings, acting as president of JD's Café, signed a quitclaim deed purportedly conveying the premises to Cummings Enterprises, Inc. (Cummings Enterprises), for one dollar and other valuable consideration. On March 26, 2012, Cummings Enterprises, acting through its president, Julia [Kish], the present wife of Curcio, Sr., purportedly conveyed the premises to the plaintiff corporation, for one dollar and other valuable consideration. The defendants claim that at the time Cummings Enterprises acquired the premises, Curcio, Jr., as the sole shareholder of JD's Café, was the only person with authority to transfer any of its corporate assets, and that the evidence did not establish that he legally transferred ownership and control of that corporation to Curcio, Sr., or that he, as the sole shareholder, ever consented to the conveyance of the premises from JD's Café to Cummings Enterprises. As a result, the defendants contend that the two transactions involving Cummings Enterprises were void and that JD's Café remains the owner of the premises. The plaintiff claims that the evidence is overwhelming that Curcio, Jr., transferred his interest in JD's Café to Curcio, Sr., in 2007. The plaintiff asserts, and the court found, that it had record ownership of the premises, having received title from Cummings Enterprises on March 26, 2012, for one dollar and other valuable consideration, after other conveyances already had occurred that divested Curcio, Jr., of any ownership interest, by virtue of a quitclaim deed recorded in the Stratford land records on April 4, 2012.

> The evidence, including the testimony of Curcio, Jr., and Curcio, Sr., demonstrated that Curcio, Jr., acquired title to the premises on June 15, 1995. Additional evidence, including the testimony of Judith Curcio, demonstrated that, in July, 2007, the premises were conveyed to Judith Curcio, who testified that the premises were conveyed to her for "one day or less," as arranged by

> Curcio, Sr., "to protect my son and to continue him still having ownership of the property and being able to live there without problems that were occurring with [the defendant's friend, Alvaro Albuquerque]." On July 19, 2007, the premises were conveyed from Judith Curcio to JD's Café by a quitclaim deed recorded on July 20, 2007. On August 22, 2011, JD's Café purportedly conveyed the premises to Cummings Enterprises for $1 and other valuable consideration. This quitclaim deed was signed by Cummings as president of JD's Café. On March 26, 2012, Cummings Enterprises purportedly conveyed the premises to the plaintiff for $1 and other valuable consideration. This deed was signed by Julia [Kish] as president of Cummings Enterprises.

*Id*. at 163.

The Internal Revenue Service has arrived at the same conclusion as the Connecticut Appellate Court. On August 29, 2013, Gus Curcio, Sr. filed a petition to quash a subpoena by the IRS. See *Curcio v. Commissioner of Internal Revenue*, 3:13-cv-1272 (AWT). The IRS subpoenaed from Mr. Curcio's accountant, Kent Wahlberg CPA, seeking "any documentation from 2011 and 2012 1120 Income Tax Returns that will show and verify payments for consulting fees, accounting fees, rent and loans." See Summons, Document 1-1, 13-cv-1272. Among the 27 businesses listed in the subpoena were Success, Inc., Yellow Rose, Inc., Hawley Enterprises, Inc., Regensburger Enterprises, Inc., and Keepers, Inc.

The IRS moved to dismiss the petition, claiming an interrelation between all the companies in the subpoena. The IRS' memorandum in support of its motion to dismiss the petition to quash the subpoena stated:

> In fact, many of the entities that are on the list attached to the summons issued to Wahlberg use P.O. Box 524, Stratford, CT as their mailing address, matching Curcio's address. The revenue officer has confirmed with the Post Office that Curcio continues to receive his mail at this post office box. In addition, each entity listed 33A Light Street, Stratford, CT or 1055 Stratford Avenue, Stratford,

> CT as the location of its business. 33A Light St is owned by Red Buff Rita, Inc., of which Curcio is president, secretary, and director and was originally owned by Enrica Rita Curcio, Curcio's mother. 1055 Stratford Avenue is owned by Bridgeport Redevelopment, Inc., of which Kish is listed as president.
>
> There is a clear pattern with regard to the expenses associated with the returns filed by the entities listed in the summons. Almost every entity in question reported a significant loss due to expenses related to another listed entity. These businesses also used a combination of legal and professional fees, consulting fees, management fees and accounting fees to eliminate any identifiable earnings, or to secure a loss. Most entities claimed a significant expense for rent and almost all claimed expenses for utilities. Some vehicles were expensed. Almost every tax return was signed with a signature stamp by both the taxpayer and Wahlberg, who prepared all of these returns.

See Doc. 14, dated October 7, 2013, 3:13-cv-1272 (AWT).

Judge Thompson dismissed Mr. Curcio's argument February 3, 2014, and enforced the subpoena from the IRS. Mr. Curcio has a long history of hiding assets from creditors through a complex web of companies.

What is most shocking is the brazen borderline of legality and illegality Mr. Curcio inhabits in plain sight. More than two years after an entity, probably a federal agency, told Citizens Bank, N.A. to shut down more than 60 bank accounts held by Mr. Curcio and his army of straw people, nothing has happened to him. Creditors here examined Shaun Moffatt, the on-paper owner of SRKING 2, LLC, one of these entities. Mr. Moffatt testified he had no understanding of why "his" company, SRKING 2, LLC, applied for a Small Business Administration payout or why it got $61,400 of SBA monies or why Joseph Regensburger ended up with a $26,000 or so check of these monies.

In this unenviable position of litigating against a man who has created such a web of

corporate subterfuge that he incurs debts through the names of other human beings and then when that straw debtor files bankruptcy, Creditors now fight a puppet master within that bankruptcy itself when he tampers with witnesses. If Curcio is not interfering with witnesses and lawful orders of the Court when he tells Ms. Schede that she cannot take things that have been subpoenaed, because he refused to allow her to produce them, then Creditors have no words for what is happening here.

### IV.    Mr. Curcio Is Subject to Fed. R. Civ. P. 34

Since the inherent powers of the Court in this instance apply only to a party like Mr. Curcio for his conduct in this forum, in this Ch. 7 petition, Creditors focus here for the remainder of this reply. "The court's inherent authority to award sanctions for contempt is based upon the need to control the proceedings before it." *Worms* v. *Yuri Vladimirovich Rozhkov*, Docket No. 20-cv-6422 (LJL), 2021 U.S. Dist. LEXIS 171238, at *8 (S.D.N.Y. Sep. 9, 2021).

In *Worms*, the District Court for the S.D.N.Y. overturned the Bankruptcy Court for the S.D.N.Y. for sanctioning a lawyer for costs based on the appeal of a ruling stemming from that lawyer's failure to comply with various discovery orders in bankruptcy. That is not the situation here: Creditors seek an order to show cause why sanctions should enter against Mr. Curcio for his conduct here. "[A] bankruptcy court's authority generally extends only to imposing sanctions for behavior before it." *Worms*, 2021 U.S. Dist. LEXIS 171238, at *7.

Mr. Curcio provided some documents for Cheryl Schede to turn over for her Rule 2004 exam, and refused to provide others. He had custody and control of the documents. "Control for the purposes of discovery is broadly defined, and includes situations where the party has the practical ability to obtain the documents from another, irrespective of his legal entitlement to the documents." (internal quotations and citations omitted) *In re Bello*, 528 B.R. 562, 567 (Bankr. E.D.N.Y. 2015).

Ms. Schede cannot have control and custody over some of Quickbooks, sufficient to produce the profit and loss statements and balance sheets for the 18 entities at issue, but then not have custody and control over the actual digital files that created those documents. Mr. Curcio stepped in and interfered with her custody and control and her ability to produce these documents.

Mr. Curcio had custody and control of the SRKING 2, LLC documents and turned over some, and denied others. Shaun Moffatt, although the ostensible owner of SRKING 2, LLC, admitted he did not produce the documents sought in the Rule 2004 exam for SRKING 2, LLC. He did not even know whose handwriting was on the responses. See ECF 240. Mr. Curcio was in control there, as well.

It is further fascinating to note that Mr. Curcio has objected to this Motion for Order to Show Cause, but Ms. Schede has not.

Mr. Curcio is bound to produce a similar objection to the Creditors' motion for order to show cause against SRKING 2, LLC. At some point, Mr. Curcio's shenanigans have to stop.

Creditors have spent a significant amount of time trying to understand the nature of assets available to cover their claims in this case, and have been met with Fifth Amendment claims in a civil case, stonewalling, obfuscation, lies, deceit and fraud.

    Creditors urge this Court to action.

    Dated: September 21, 2022, at Hartford, Connecticut.

    Respectfully Submitted,

BY: _____/s/__*KENNETH J. KRAYESKE*
Kenneth J. Krayeske, Esq.
Counsel for Crystal Horrocks et al
Kenneth J. Krayeske Law Offices
255 Main Street, 5th Fl.
Hartford, CT 06016
(860) 995-5842
FAX: (860) 760-6590
Email: attorney@kenkrayeske.com
Federal Bar # CT28498